## WEST *against* ANDERSON.

*Tolland,*
August, 1831.

West
*v.*
Anderson.

9  107
74  584

If a horse be sold, to be taken by the buyer as he is, sound or unsound, and nothing more appears, the seller is not liable for any unsoundness, though he had knowledge of it at the time of the sale, and did not communicate such knowledge to the buyer.

But if any *misrepresentation* be used, by the seller, in the sale of a horse, he is liable for unsoundness existing at the time of the sale, though the horse were sold as he was, sound or unsound.

Therefore, where a horse was thus sold ; and it further appeared, that he was then thin in flesh from disease, and had a bunch on his neck, also the effect of disease ; and the seller falsely represented to the buyer, that the horse's want of flesh was caused by a long journey, and the bunch on his neck, by his having been bled ; it was held, in an action against the seller, that he was precluded, by such false affirmations, from availing himself of the terms of sale as defence.

In an action for false affirmations in the sale of a horse, no damages can be recovered for the keep of the horse, previous to an offer by the plaintiff to return him to the defendant.

Though the remarks of the judge, on returning the jury to a reconsideration of their verdict, are not, generally, the ground of a motion for a new trial ; yet if the judge, in the course of such remarks, lay down, for the first time in the cause, an incorrect rule of damages, to which the jury, on reconsideration, conform their verdict, the party injuriously affected thereby, may have remedy, by a motion for a new trial.

THIS was an action on the case for a false affirmation in the sale of a horse by exchange.

The cause was tried at *Tolland, October* term, 1830, before *Peters,* J.

On the trial, the plaintiff adduced testimony to shew, that the defendant, at the time of the exchange, had knowledge of the unsoundness of the horse, but did not communicate it to the plaintiff ; and that the horse was then thin in flesh from disease and had a bunch on his neck, which was also the effect of disease ; and that the defendant falsely represented to the plaintiff, that the horse's want of flesh was caused by a long journey, and the bunch on his neck by his having been bled. The plaintiff also proved, that the horse died after he had kept him four months ; but it did not appear, that he had, at any time, offered to return him to the defendant, although the parties resided in the same neighbourhood.

The defendant, on his part, claimed to have proved, that he sold the horse to the plaintiff, to be taken as he was, sound or unsound. He also claimed, that no damages could be given beyond the value of the horse, if sound, at the time of the bargain.

*Tolland,*
*August, 1831.*

West
*v.*
Anderson.

The judge charged the jury, that if the defendant knew of any unsoundness in the horse—that the horse had the disease of which he died—at the time of the exchange, and did not communicate it to the plaintiff; or if the defendant used any misrepresentation as to the horse, and the horse was then unsound; they must give their verdict for the plaintiff, with such damages as they should think just and reasonable. The jury returned a verdict for the plaintiff with 46 dollars damages. The judge returned them to a second consideration, observing that in addition to the value of the horse, as if sound at the time of the exchange, they should give such damages as would reimburse the plaintiff for expenses in keeping and doctoring the horse, and in prosecuting this suit for redress. The jury, on reconsideration, returned a verdict for 73 dollars, 75 cents, damages, which was accepted. The defendant thereupon moved for a new trial, for a misdirection.

*H. Strong*, in support of the motion, contended, 1. That the first clause of the charge was erroneous. When an article is sold as it is, *with all faults*, the seller is not liable for latent defects; but there must be some positive fraud or artifice to support the action. A *concealment* implies such fraud or artifice, in a greater or less degree; but to be *silent*, is not to *conceal*. *Baglehole* v. *Walters*, 3 *Campb.* 154. *Pickering* & al. v. *Dowson* & al. 4 *Taun.* 779. 1 *Swift's Dig.* 556. The first clause of the charge makes the seller liable for a knowledge of existing defects, accompanied by mere silence in relation to such defects.

2. That the rule of damages prescribed to the jury was wrong. This is an action for an injury to the plaintiff resulting from a *contract;* and the rule of damages must be the same as though it had been brought on the contract directly. There can be no recovery by the buyer, for the *keep* of the horse, where he has made no offer to return him. *Caswell* v. *Coare*, 1 *Taun.* 566. Still less can the plaintiff recover the expenses of the suit, as damages, in such an action as this.

*Goddard*, contra, contended, 1. That the defendant's selling the horse with all faults, did not protect him from liability for fraudulent concealment and misrepresentation. 1 *Kent's Comm.* 377.

2. That the charge, taken in connexion with the facts stated

in the motion, presented a case of fraudulent concealment and misrepresentation.

3. That there ought not to be a new trial on account of the damages. In the first place, the assessment of damages, in a case like this, is peculiarly within the province of the jury. Secondly, the damages given, upon the principles laid down to the jury, only *indemnify* the plaintiff; and no more than justice has been done to him. Thirdly, *public justice* does not require further litigation in this case. It is for the health of society, that, in this class of cases, the jury should give damages a little *punitive.* Fourthly, the opinion expressed to the jury, was strictly correct. This is an action for *fraud;* and there is no rule of law to restrain the triers from doing entire justice. The *contract* furnishes no rule of damages applicable to this case. Fifthly, the *charge* lays down no rule of damages whatever; and the remarks of the judge, on returning the jury to a second consideration, furnish no ground for a new trial. Sixthly, if the opinion of the judge were expressed in his charge, and erroneous, the plaintiff may now remove the objection, by *remitting* the difference between the two sums assessed as damages, and thus render a new trial unnecessary.

WILLIAMS, J. The defendant, on his part, claims, that he sold the horse, to be taken by the plaintiff as he was, sound or unsound. If that was true, and that was all, there is no doubt that the plaintiff could have no right to recover, unless the court can make bargains for parties.

The plaintiff, however, says, that coupled with this assertion the defendant also undertook to account for certain appearances on the horse, by false assertions, *viz.*, that his want of flesh was caused by a long journey, and the bunch on his neck, by bleeding. Now, if the defendant did make these assertions, and they were false, they completely repelled the defence, that the plaintiff took the horse as he was, sound or unsound. These assertions were calculated to throw the plaintiff off his guard, and to induce him to assume a risk which he never would have done, had they not have been made. They were probably the procuring cause of the contract now set up as a defence by the defendant; that he would take the horse sound or unsound. The defendant, therefore, ought not to be protected thereby, or avail himself of his own fraud. This was probably all that the judge intended in his charge; but it seems

to me, that inadvertently he has gone further, and that the jury must have understood, that if the horse had the unsoundness, (of which he died) at the time of the exchange, and that was known to the defendant, and he did not communicate it, or if any misrepresentation was used by the defendant, they must find for the plaintiff. There are two distinct propositions : one refers to a suppression of facts ; the other, to a misrepresentation of them. The former is, indeed, justified, by the opinion of Lord *Kenyon*, in *Mellish* v. *Motteaux*, *Peake's Ca.* 115. where it was held, that where a ship was sold *with all faults*, and had latent defects known to the defendant, and which the plaintiff could not discover, by any attention whatever, the seller was responsible. But in *Baglehole* v. *Walters*, 3 *Campb.* 154. that case is directly overruled, and Lord *Ellenborough* held, that it was immaterial how many faults she had, if there was no artifice used to disguise them, or prevent their being disclosed ; that by buying in this way the purchaser runs the risk of latent defects, and probably purchases for a proportional sum. And in *Pickering* v. *Dowson*, 4 *Taun.* 784. the last case is said never to have been questioned at the bar ; and is sanctioned by the court of *Common Pleas*. The general principle, then, is settled, in conformity with the opinion of the ancient orator, that mere silence, when the party is not called upon to declare, is not a representation. *Aliud est tacere, aliud celare. Cicero de Offic.*

Is there any difference, as seemed to be intimated, that these were cases of vessels ? It seems to me, that the construction of a contract must be the same, whether it relate to a ship or a horse ; and indeed Lord *Ellenborough* illustrates his opinion, by this very case. He says : " I may be possessed of a horse I know to have many faults ; and I wish to get rid of him for whatever sum he will fetch. I desire my servant to dispose of him, and instead of giving a warranty of soundness, to sell him *with all faults.* Having thus laboriously freed myself from responsibility, am I to be liable, if it be afterwards discovered that the horse was unsound ? Why did not the purchaser examine him in the market, when exposed to sale ? By acceding to buy the horse *with all faults,* he takes upon himself the risk of latent or secret faults, and calculates accordingly the price which he gives." 3 *Campb.* 156.

The construction then of this contract, must be the same as if the thing sold were a ship, and in the absence of any fraud or

misrepresentation, and with the suspicion that the offer to sell *sound or unsound* would naturally excite, I can see no reason for saying the vendor was liable.    In such a case, it is difficult to see any thing immoral, where there is no artifice or misrepresentation.    But " whatever morality may require, it is too much for commerce to require," that in such a case, the vendor should be responsible.

To the first proposition, then, in the charge, I cannot assent.

It is said, however, that this remark must be considered as connected with the other proof and as coupled with the false representation.    This ought to be done, if it will fairly admit such construction ; but the case shows, that the plaintiff offered to prove, 1. The unsoundness of the horse ; 2. that the defendant knew it, and did not communicate it ; and 3. that he made misrepresentations calculated to conceal it.    Under this claim the jury are instructed, that if the horse was unsound, and that known to the defendant, and he neglected to communicate it ; *or* if the defendant made misrepresentations respecting it ; they must find for the plaintiff.    The jury, therefore, it appears to me, were as much bound to bring in a verdict for the plaintiff, upon finding the former propositions without the last, as the last without the former ; and of course, may have founded their verdict upon the fact of knowledge of unsoundness and concealment of it.    If so, according to my view of the law, injustice may have been done.

With the other principle contained in the charge, I fully concur.    The defendant can never palliate or destroy the effect of his false representation, by shewing, that he added, that he sold the animal *with all faults,* or sound or unsound.    Such a construction would be as disgraceful to the law, as such conduct would be to him who practised it.

Another objection was made to the opinion of the court in relation to damages.    This action is founded on a contract ; and the damages are founded on a breach of that contract. But the expenses of keeping the horse, do not necessarily arise from this breach of contract.    Had the plaintiff offered to return the horse, and had the defendant refused to receive him, he might, upon a count adapted to that state of facts, have recovered for his keep,—according to the case of *Caswell* v. *Coare,* 1 *Taun.* 566.    But while the horse is his own and he has not offered to return him, he must keep his own horse, as long as he has it.

*Tolland,*
*August 1831.*

West
*v.*
Anderson.

A doubt has been suggested, whether as the remarks on this part of the case to the jury, were not in the charge, they are the subject of a motion for a new trial.

When questions of law connected with the testimony, have been noticed, by the judge, in the charge to the jury, the after remarks upon the verdict are not to be caught at, as the ground of a motion for a new trial. But here was a point not noticed at all, by the judge in his charge, and followed by a direct effect upon the jury, evinced by an increase of damages, which can be accounted for upon no principle, except that stated by the judge when he returned the jury to a second consideration; and the party affected by it can have no remedy, except by a motion or a petition for a new trial, unless the plaintiff remits the damages. A petition would only add to the delay and expenses of the party injured; and no established rule prevents this court from doing what it is manifest must be done, in some way.

I am, therefore, of opinion, that the defendant, upon both points, is entitled to a new trial.

The other Judges were of the same opinion.

New trial to be granted.